UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

BRAD A. SEARS                    CIVIL ACTION NO. 3:12-cv-1282
      LA. DOC #410964
VS.                              SECTION P

                                 JUDGE ROBERT G. JAMES

BRIAN NEWCOMER, ET AL.           MAGISTRATE JUDGE KAREN L. HAYES

REPORT AND RECOMMENDATION

Pro se plaintiff Brad A. Spears, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on May 11, 2012. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Ouachita Correctional Center (OCC), Monroe, Louisiana.  He sued OCC Warden Brian Newcomer, Assistant Warden Goynes, Nurses Norman and Broadway, and Corrections Officers Brown, Barmore, Morris, and Britton claiming that they have denied him medical treatment for his "transsexualism." He prays for injunctive relief – "to be transferred to a medical facility in/out of state to receive the medical treatment I need for my medical condition." This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

Plaintiff was arrested and detained at OCC in August 2011.   He was thereafter convicted of some unspecified felony and sentenced to serve his sentence in the custody of the LDOC.  He

remains incarcerated at OCC. According to the LDOC's Inmate Locator Service (225-383-4580), plaintiff's earliest possible release date is November 26, 2013.

On some unspecified date he claims that he was diagnosed with the "medical condition known as 'transsexualism.'" He claims that he is denied treatment for this condition; however, he has not identified the treatment he is being denied.  He claims to have filed numerous sick calls requesting a psychiatric examination; however, his requests were ignored or denied.  He requested transfer to another facility that would provide the as yet unspecified "treatment"; however, that request was also ignored or denied.

Plaintiff contends that he is "being denied my right to existence in the feminine gender." Corrections officials at OCC have denied him the use of his "female name" and he is not allowed to wear clothes "that represents female attire."  He also complains that he must wear "used boxers that have been worn by other inmates and then washed and given to [him]..."

As noted above, plaintiff prays only for his transfer to another facility which will provide the unspecified treatment he claims to need.

### Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C.§1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).  A civil rights complaint fails to state a claim upon which relief can be

2

granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v.*

*Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### 2. Medical Care

Plaintiff is an inmate in the custody of the LDOC. He complains that he is receiving inadequate medical care for the condition he identifies as "transsexualism"; however, as shown above, he has not identified the specific treatment he is being denied.

The constitutional right of a convicted prisoner to prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm.  Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm.  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation the prisoner plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety.  *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the defendants  identified in his pleadings.

In *Praylor v. Texas Dept. Of Criminal Justice*, 430 F.3d 1208 (5th Cir. 2005) (per curiam), the Fifth Circuit addressed the issue of transsexualism in the prison context.  In that case, the plaintiff appealed the denial of his prisoner civil rights complaint seeking an injunction directing the defendants to provide hormone therapy and brassieres. In affirming the judgment of the District Court, the Court of Appeals observed,

> This circuit has not addressed the issue of providing hormone treatment to transsexual inmates. Other circuits that have considered the issue have concluded that declining to provide a transsexual with hormone treatment does not amount to acting with deliberate indifference to a serious medical need. *See, e.g., White v. Farrier*, 849 F.2d 322 (8th Cir.1988) (acknowledging that transsexualism is a serious medical condition, but holding that declining to provide hormone therapy did not constitute deliberate indifference to that medical need); *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir.1987) (holding transsexual prisoner has no constitutional right to 'any particular type of treatment, such as estrogen therapy'); *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir.1986) (concluding that declining to provide hormone therapy did not constitute deliberate indifference when prison officials offered alternate treatment). Assuming, without deciding, that transsexualism does present a serious medical need, we hold that, on this record, the refusal to provide hormone therapy did not constitute the requisite deliberate indifference.
>
> In Praylor's case, the record reflects that he did not request any form of treatment other than hormone therapy. Testimony from the medical director at the TDCJ revealed that the TDCJ had a policy for treating transsexuals, but that Praylor did not qualify for hormone therapy because of the length of his term and the prison's inability to perform a sex change operation, the lack of medical necessity for the hormone, and the disruption to the all-male prison. *Cf. De'Lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir.2003). Moreover, the director testified that Praylor had been evaluated on two occasions and denied eligibility for hormone treatment and that the TDCJ did provide mental health screening as part of its process for evaluating transsexuals. *See Supre*, 792 F.2d at 963. Accordingly, based upon the instant record and circumstances of Praylor's complaint, the denial of his specific request for hormone therapy does not constitute deliberate indifference. *See Meriwether*, 821 F.2d at 413; *Supre*, 792 F.2d at 963.

*Praylor v. Texas Dept. Of Criminal Justice*, 430 F.3d at 1209.

5

Here, plaintiff, unlike the unsuccessful plaintiff in Praylor, has offered nothing other than his conclusory statement to establish that he is a transsexual; nor has he identified the specific treatment he claims is being denied to him. Further, he has provided no specifics with regard to the date of his diagnosis, the name of the physician who made the diagnosis, the treatment options recommended by the treating physician, and the treatment options plaintiff availed himself of prior to his current incarceration.

In short, based upon the complaint and the current state of Fifth Circuit jurisprudence, plaintiff has failed to state a claim for which relief may be granted. Further, as shown below, even if plaintiff were permitted to amend his complaint in order to state a claim for which relief could be granted, his complaint would still be subject to dismissal because he clearly is not entitled to the relief he seeks – transfer to some unspecified medical center.

### 3. Injunctive Relief – Transfer

Plaintiff seeks only injunctive relief – specifically an order directing the OCC defendants to transfer him to a medical facility in Louisiana or elsewhere where he can  receive the unspecified medical treatment he claims to need. Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" to act or refrain from acting in a certain manner is an extraordinary remedy. *See Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir.1985). Plaintiff seeks a transfer to another as yet unidentified facility where he can receive unspecified medical treatment.

Plaintiff is an LDOC inmate. Under Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the

jurisdiction of the department. <u>The director of corrections shall assign each newly committed</u> <u>inmate to an appropriate penal or correctional facility. The director may transfer an inmate from</u> <u>one such facility to another, insofar as the transfer is consistent with the commitment and in</u> <u>accordance with treatment, training and security needs established by the department</u>..." La. R.S.15:824(A) (emphasis supplied).

Since plaintiff is an LDOC inmate his placement is solely within the purview of both the LDOC and the wardens of the transferring institution and institution to which the prisoner is ultimately transferred.  Here, plaintiff has named the warden of his present place of confinement as a defendant, however, the Warden cannot unilaterally effect plaintiff's transfer to another facility, given plaintiff's status as an LDOC inmate.

Furthermore, even if plaintiff were permitted to amend his complaint to name additional defendants, his claim would still be subject to dismissal.  Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974).  Plaintiff cannot show that the choice of his current place of confinement was violative of any rights guaranteed under the Constitution or laws of the United States. To hold otherwise would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.  *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000).

Therefore, to the extent that plaintiff seeks an order directing the defendants to transfer him to another prison, his claim should be dismissed for failing to state a claim for which relief may be granted.

### Conclusion and Recommendation

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. §§1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.[1]  A party may respond to another

---

[1] Should plaintiff object to this Report and Recommendation, he should address the concerns noted above. Specifically, any objection should provide: (1) The name and address of the physician or physicians who have diagnosed his condition; (2) the date upon which this diagnosis was made; (3) a description of the treatment or therapy recommended by the physician(s); (4) a detailed statement outlining the therapy or treatment undergone by plaintiff prior to his incarceration; (5) a detailed description of the therapy or treatment plaintiff needs during his current incarceration and, a statement – preferably from his treating physician – to establish why such treatment or therapy cannot be postponed until plaintiff's release from custody; and, (6) plaintiff should identify the facilities where he can be afforded the treatment he needs.

Finally, plaintiff should establish whether he has requested treatment/transfer from the Secretary of the Louisiana Department of Public Safety and Corrections.

party's objections within fourteen (14) days after being served with a copy of any objections or

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the
proposed legal conclusions reflected in this Report and Recommendation within fourteen
(14) days following the date of its service, or within the time frame authorized by
Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or
the legal conclusions accepted by the District Court, except upon grounds of plain error.
*See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, June 29, 2012.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE